**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

------------------------------------------------------------x
MICROSTRATEGY SERVICES CORPORATION :  Civil Action No. 1:14-CV-1244
                                    :
                    Plaintiff,      :
                                    :
        - against -                 :
                                    :  **Demand for Jury Trial**
OPENRISK, LLC,                      :
                                    :
                    Defendant.      :
------------------------------------------------------------x

## COMPLAINT

Plaintiff MicroStrategy Services Corporation ("MicroStrategy"), by its undersigned counsel, alleges as follows:

### INTRODUCTION

1. In September 2011, MicroStrategy licensed to Defendant OpenRisk, LLC ("OpenRisk") MicroStrategy's cloud-based computing services. The parties' contractual agreement was set forth in two documents: a "Cloud Intelligence Master Subscription Agreement" (the "Subscription Agreement"); and a "Cloud Intelligence Order Form" (the "Order Form"), which was referenced and incorporated into the Subscription Agreement. True and correct copies of the Subscription Agreement and the Order Form are attached hereto as Exhibits A and B, respectively. Under the terms of those documents, MicroStrategy agreed to provide OpenRisk with access to its cloud services, and OpenRisk agreed to make quarterly payments of $63,000 over the five-year term of the contract. OpenRisk, however, has failed to make the payments due and owing to MicroStrategy under the parties' contract. Accordingly, MicroStrategy brings this case against OpenRisk to recover damages incurred as a result of OpenRisk's breach of contract.

## PARTIES

2. Plaintiff MicroStrategy is a corporation formed under the laws of the state of Delaware, with a principal place of business at 1850 Towers Crescent Plaza, Tysons Corner, Virginia. Among the lines of business that it offers to its customers are "cloud-based" services, which allow users to store their data and applications on MicroStrategy's servers, thereby eliminating the need for software or hardware maintenance, configuration set-ups, or facilities management.

3. Upon information and belief, OpenRisk is a limited liability company formed under the laws of the state of Delaware, with a principal place of business at 65 Clark Street, Belmont, Middlesex County, Massachusetts. Upon information and belief, OpenRisk was founded in January 2011 to develop a software platform to host catastrophe models that could estimate potential financial damage to real property portfolios from natural disasters.

4. Upon information and belief, the members of OpenRisk are: five individuals, each of whom are domiciled in Massachusetts; two Massachusetts limited liability companies, the members of which are individuals who are domiciled in Massachusetts; a trust formed under the laws of California, the trustee of which is a citizen of California; a Massachusetts limited partnership, the partners of which are citizens of Massachusetts; and a Florida limited liability company, the sole member of which is a citizen of New Jersey.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different States and the amount in controversy exceeds $75,000.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to MicroStrategy's claims occurred in this District. In addition, the parties stipulated in the Subscription Agreement that "[a]ny disputes, actions, claims or causes of action arising out of or in connection with this Agreement, our relationship under it or the Online Service shall be subject to the exclusive jurisdiction of the state and federal courts located in Fairfax County, Virginia." (Subscription Agreement, § 18.) The Subscription Agreement also provides that the parties "irrevocably consent to the exclusive jurisdiction of and venue in such courts." (*Ibid.*)

## GOVERNING LAW

7. In the Subscription Agreement, the parties agreed that "[t]his Agreement and our relationship under it shall be interpreted under and governed by the laws of the Commonwealth of Virginia and controlling United States federal law, without regard to the choice or conflicts of law provisions of any jurisdiction." (Subscription Agreement, § 18.)

## FACTUAL BACKGROUND

### A. MicroStrategy And OpenRisk Enter Into A Contract

8. In September 2011, MicroStrategy and OpenRisk entered into the Subscription Agreement. The Subscription Agreement itself governed the general terms of the parties' contract. It referenced and incorporated the Order Form, which set forth more specific terms, including OpenRisk's payment obligations and the duration of the contract.

9. OpenRisk executed the Subscription Agreement and the Order Form on September 28, 2011.

10. MicroStrategy executed the Subscription Agreement and the Order Form on September 29, 2011.

11. Upon information and belief, OpenRisk entered into the Subscription Agreement in order to use MicroStrategy's technology to provide a data storage infrastructure to host OpenRisk's software platform.

## B. The Terms' Of The Parties' Contract

12. In the Subscription Agreement, MicroStrategy agreed to provide OpenRisk with access to what the contract called the "Online Service"—*i.e.*, certain of MicroStrategy's cloud services technologies. (Subscription Agreement, §§ 1, 19.)

13. In exchange, OpenRisk agreed to "pay all fees or charges to [its] account in accordance with the fees, charges, and billing terms set forth in an Order Form." (Subscription Agreement, § 4.) The Order Form in turn provides that OpenRisk would pay $21,000 per month to MicroStrategy, composed of a $15,000 "Data Warehousing" fee and a $6,000 "Business Intelligence Environment" fee. (Order Form, at pp. 1-2.) Although these charges were expressed on a monthly basis, the Order Form provides that OpenRisk would be billed quarterly. (Order Form, at p. 1.) Thus, OpenRisk was obligated to pay to MicroStrategy $63,000 every quarter.

14. OpenRisk was to make its first quarterly payment of $63,000 on or before January 1, 2012. (Order Form, at p. 2.) OpenRisk was also required to pay a $30,000 setup fee over two installments, one due on or before October 31, 2011, and the next on or before November 30, 2011. (*Ibid.*)

15. MicroStrategy agreed to provide cloud technology, OpenRisk agreed to make payments, for a period of 60 months. Specifically, the Subscription Agreement defined "Initial Term" to mean "the initial period during which you are obligated to pay for the Online Service pursuant to an Order Form." (Subscription Agreement, § 19.) The Order Form (at p. 1)

4

contained a "Commitment Term" of 60 months. Over the Initial Term of 60 months, OpenRisk's quarterly obligation to pay $63,000 amounted to a total obligation of $1,260,000.

16. The Subscription Agreement's other terms confirm that OpenRisk was obligated to make payments for the full 60-month Initial Term of the contract. For example, the Subscription Agreement's provision governing "non-payment and suspension" provides that MicroStrategy may suspend access to its online services if OpenRisk's account becomes delinquent. (Subscription Agreement, § 6.) It then clarifies that, if MicroStrategy pursues termination of the agreement, OpenRisk would be "obligated to pay the balance due on [its] account computed in accordance with the Charges and Payment of Fees section above." (*Ibid.*) That section of the Subscription Agreement provides that (with irrelevant exceptions) "all payment obligations are non-cancelable." (Subscription Agreement, § 4.)

17. Under the Subscription Agreement's "termination for cause" provision, any breach of OpenRisk's payment obligations is deemed to be a "material breach" of the agreement. (Subscription Agreement, § 8.) That provision further states that MicroStrategy, in its sole discretion, may terminate the Subscription Agreement if any material breach of the Subscription Agreement is not cured within 30 days after notice of the breach is provided to OpenRisk. (*Ibid.*)

C. **OpenRisk Breaches The Contract**

18. In performance of the parties' contract, MicroStrategy immediately provided access to and support for its Online Service to OpenRisk.

19. On or about November 1, 2011, OpenRisk informed MicroStrategy by email that, because negotiations with a potential purchaser of the company had failed, OpenRisk could "no

longer raise funds or continue as a going concern," had "no cash and no way to fund operations," and would be "shutting down over the next few weeks."

20. On or about November 9, 2011, OpenRisk stated to MicroStrategy by email that OpenRisk "cannot continue as a going concern" and would be "closing company operations effective immediately." Thus, OpenRisk requested that MicroStrategy "[p]lease discontinue all services to OpenRisk, LLC."

21. OpenRisk then failed to make its first quarterly payment ($63,000) on or before January 1, 2012, as it was required to do under the terms of the parties' contract.

22. On January 20, 2012, MicroStrategy sent a letter to OpenRisk providing notice that OpenRisk was in material breach of the parties' contract because of its failure to make the first quarterly payment. A true and correct copy of this Notice of Material Breach is attached hereto as Exhibit C. The Notice of Material Breach informed OpenRisk that the Subscription Agreement and the Order Form would be automatically terminated if payment was not received by February 20, 2012.

23. OpenRisk did not make the payment by February 20, 2012, and in fact has never made *any* of the non-cancelable quarterly payments owed to MicroStrategy under the Subscription Agreement.

24. Upon information and belief, although OpenRisk proclaimed in November 2011 that it would not be able to continue as a going concern, OpenRisk nonetheless continues to be an entity with ongoing legal existence.

### COUNT I
### (Breach of Contract)

25. MicroStrategy repeats and incorporates by reference all of the preceding allegations.

6

26.     The Subscription Agreement (incorporating the Order Form) is a valid, binding, and enforceable contract between MicroStrategy and OpenRisk.

27.     MicroStrategy performed its obligations under the Subscription Agreement (incorporating the Order Form) by providing the Online Service.

28.     OpenRisk repudiated its obligations under the Subscription Agreement (incorporating the Order Form) by informing MicroStrategy that OpenRisk could not continue as a going concern and by requesting that MicroStrategy discontinue work under the parties' contract.

29.     OpenRisk thereafter breached the Subscription Agreement (incorporating the Order Form) by failing to make payments due and owing to MicroStrategy.

30.     As a direct and proximate result of the foregoing breach of contract, MicroStrategy has suffered damages and is presently owed an amount of $1,260,000, plus pre-judgment interest and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, MicroStrategy prays for judgment against OpenRisk as follows:

(a)     Damages sustained by MicroStrategy;

(b)     Pre-judgment and post-judgment interest; and

(c)     Such other relief as the Court may deem just and proper.

## JURY DEMAND

MicroStrategy hereby demands trial of this matter by a jury.

Dated: September 19, 2014          Respectfully submitted,

*/s/ Donald Burke*
_____
Kathryn S. Zecca (*pro hac vice* forthcoming)
Donald Burke (VA Bar No. 76550)
ROBBINS, RUSSELL, ENGLERT, ORSECK,
   UNTEREINER & SAUBER LLC
1801 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
kzecca@robbinsrussell.com
dburke@robbinsrussell.com

*Attorneys for MicroStrategy Services Corporation*