IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MICROSTRATEGY SERVICES CORP.,    )
                                 )
                                 )
        Plaintiff,               )
                                 )
        v.                       )    1:14cv1244 (JCC/IDD)
                                 )
OPENRISK, LLC,                   )
                                 )
                                 )
        Defendant.               )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on MicroStrategy

Services Corp.'s ("MicroStrategy") Motion to Dismiss the Amended

Counterclaims.  [Dkt. 39.]  For the following reasons, the Court

will grant in part and deny in part the motion.

**I. Background**

In September of 2011, MicroStrategy, which provides

cloud-based computing services, and OpenRisk, LLC ("OpenRisk"),

a software start-up developing a platform to estimate damages to

real property caused by natural disasters, entered into a

contract.  In exchange for payment, MicroStrategy would provide

two terabytes of data storage and set up a cloud environment

subject to specifications set forth in confidential, proprietary

OpenRisk software architecture which OpenRisk shared with

MicroStrategy.  (Am. CounterCl. [Dkt. 35] ¶¶ 1, 5-6.)  The

1

contract had a term of five years but permitted MicroStrategy to terminate the contract for OpenRisk's failure to pay fees. (*Id.* ¶ 6.)

At about the same time it entered into the MicroStrategy contract, OpenRisk was introduced to a potential investor, Marc Roston ("Roston"). (*Id.* ¶ 8.)  Roston offered $200,000 for a controlling interest in OpenRisk. (*Id.*)  Believing the offer was too low, OpenRisk rejected it. (*Id.*)  According to the Amended Counterclaims, after OpenRisk turned down his offer, Roston conspired with three officers of the company (collectively referred to as the "former officers") to leave the company in October of 2011 so as to force OpenRisk to accept Roston's offer. (*Id.* ¶ 9.)  He also conspired with the former officers to steal OpenRisk's intellectual property and confidential and proprietary business information.[1] (*Id.* ¶ 10.)  Roston and the former officers formed a new company, Spectant Group LLC ("Spectant"), allegedly to carry out this plan. (*Id.*)  MicroStrategy purportedly joined this conspiracy, facilitating the transfer of OpenRisk's information from its cloud environment to Spectrant, secretly accepting payments from

---

[1] A shareholder derivative suit brought against the former officers has been pending in Massachusetts state court since November of 2011. (MicroStrategy's Mem. in Supp. [Dkt. 40] at 3.)

Roston and the former officers (collectively "co-conspirators")[2] to be credited to OpenRisk's account without its knowledge, and secretly working with the co-conspirators to continue developing the OpenRisk platform after the former officers had left the company. (*Id.* ¶ 11.) OpenRisk alleges that MicroStrategy continued in this conspiracy even after it received a cease and desist letter in December of 2011 advising MicroStrategy that the former officers had failed to return OpenRisk property. (*Id.* ¶ 101.) At the time it sent this letter, OpenRisk was unaware that MicroStrategy had transferred its data to Spectrant, nor was it even aware that Spectrant existed or the scope of work undertaken by the co-conspirators. (*Id.* ¶ 101.)

In November of 2011, OpenRisk notified MicroStrategy that it was no longer a going concern and asked it to discontinue services to OpenRisk. (Compl. [Dkt. 1] ¶¶ 19-20.) OpenRisk missed its first quarterly payment of $63,000. (*Id.* ¶ 21.) MicroStrategy notified OpenRisk that it was in material breach of the contract and that the contract would be automatically terminated if payment was not received within thirty days. (*Id.* ¶ 22.) OpenRisk did not make this or any future payment. (*Id.* ¶ 23.)

---

[2] The Amended Counterclaim also alleges that Roston's companies MNR Capital and Arcvandam, and "others" are also conspirators, but those parties are not relevant for the purpose of this analysis. (Am. Countercl. ¶ 21.)

OpenRisk originally sued MicroStrategy in state court in Massachusetts in June 2014.  (Am. Countercl. ¶ 14.) MicroStrategy moved to dismiss the case, citing the forum selection clause in the contract.  (*Id.*)  Meanwhile, MicroStrategy filed this one-count breach of contract action in September of 2014.  (Compl. ¶¶ 25-30.)  In November of 2014, the Massachusetts court granted the motion to dismiss, contingent upon OpenRisk filing a counterclaim in this action or instituting a separate suit in Virginia state court.  (Am. Countercl. ¶ 17.)  The court's order prohibited MicroStrategy from raising the statute of limitations as a defense to any of the claims asserted in the Massachusetts action.  (*Id.*)

Before filing an answer, OpenRisk challenged this Court's subject matter jurisdiction, arguing that the amount-in-controversy requirement had not been satisfied.  (OpenRisk's Mem. in Supp. of Mot. to Dismiss for Lack of Jurisdiction [Dkt. 11] at 1.)  The Court[3] denied the motion.  (11/14 Hr'g Tr. [Dkt. 19] at 16 ("[S]ubject matter jurisdiction can be addressed at any point, even after judgment; and so if as further evidence is developed it appears as a matter of certainty that you cannot reach the threshold amount, then it's perfectly appropriate for the defense to raise the issue anew[.]").)

---

[3] This case was assigned to this Court after the hearing on the motion to dismiss.  (*See* 1/9/15 Order [Dkt. 31].)

OpenRisk filed several counterclaims and then amended them,[4] asserting the following claims: aiding and abetting breach of fiduciary duties ("Count I"), business conspiracy in violation of Virginia Code §§ 18.2-499 – 500 ("Count II"), common law conspiracy ("Count III"), tortious interference with contract ("Count IV"), and misappropriation of trade secrets in violation of Virginia Code § 59.1-336 ("Count V"). (Am. Countercl. ¶¶ 104-132.) MicroStrategy has moved to dismiss all five of the counterclaims. (MicroStrategy's Mot. to Dismiss [Dk.t 39].) Having been fully briefed and argued, this motion is ripe for disposition.

## II. Legal Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint[.]" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[4] OpenRisk originally sued MicroStrategy in state court in Massachusetts in June 2014. (Am. Countercl. ¶ 14.) MicroStrategy moved to dismiss the case, citing the forum selection clause in the contract. (*Id.*) The Massachusetts court granted the motion to dismiss, contingent upon OpenRisk filing a counterclaim in this action or instituting a separate suit in Virginia state court. (*Id.* ¶ 17.) The court's order prohibited MicroStrategy from raising the statute of limitations as a defense to any of the claims asserted in the Massachusetts action. (*Id.*)

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The issue in resolving such a motion is not whether the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his or her claims.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted). To survive a motion to dismiss, a plaintiff's complaint must demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Legal conclusions couched as factual allegations are not sufficient. *Twombly*, 550 U.S. at 555. Hence, a pleading that offers only "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Nor will a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

Moreover, the plaintiff does not have to show a likelihood of success on the merits.  Rather, the complaint must merely allege – directly or indirectly – each element of a "viable legal theory."  *Twombly*, 550 U.S. at 562-63.

### III. Analysis[5]

### A. Count I – Aiding and Abetting Breach of Fiduciary Duty

MicroStrategy moves to dismiss Count I of the Amended Counterclaim primarily on the basis that aiding and abetting a tort is not an independent cause of action recognized in Virginia.  (MicroStrategy's Mem. in Supp. [Dkt. 40] at 11.)

OpenRisk cites to *Halifax Corp. v. Wachovia Bank* as support for the proposition that it may assert such a cause of action.  In that case, the Supreme Court of Virginia merely adopted the trial court's reasoning and assumed, for purposes of analysis, that Virginia recognized such a cause of action.[6]  604 S.E.2d 403, 411-12 (Va. 2004).  Therefore, the *Halifax* court did not address whether such a tort exists.  This Court declined

---

[5] Pursuant to a choice-of-law provision in the parties' contract, Virginia law governs this case.  (*See* MicroStrategy's Mem. in Supp. [Dkt. 40], Ex. A, at 6 ("This agreement and our relationship under it shall be interpreted under and governed by the laws of the Commonwealth of Virginia . . . without regard to the choice or conflicts of law provision of any jurisdiction.").)

[6] In *Halifax*, the Court determined that *if* aider and abettor liability for a breach of fiduciary duty did exist in Virginia, the Plaintiffs' claims failed as it had failed to plead (1) actual knowledge of the underlying fiduciary duty and (2) actual knowledge of the breach of that fiduciary duty by the primary tortfeasor.  *Halifax*, 604 S.E.2d at 412-14.

to create such a cause of action and dismissed a claim identical to the one here for aiding and abetting a breach of fiduciary duty. *Calderon v. Aurora Loan Serv., Inc.*, 1:10CV129, 2010 WL 2306343, at *6 (E.D. Va. June 3, 2010) (citing *Tysons Toyota, Inc. v. Commonwealth Life Ins., et al*, No. 94638, 1990 WL 10039336, at *1 (Fairfax Cir. Ct. Aug. 9, 1990) (holding that "a defendant who aids and abets in the commission of a tort may be jointly liable for the tort and is not liable for a separate tort of aiding and abetting.")).  Therefore, Count I will be dismissed.[7]

MicroStrategy also challenges whether Count I is timely.  Though in its opposition OpenRisk argued that aiding and abetting a breach has a five-year statute of limitations (OpenRisk's Opp. at 9), OpenRisk agreed at the motions hearing the claim is actually subject to the two-year residual limitations period set forth in Virginia Code § 8.01-248.  *See Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995) (collecting cases and stating that a breach of fiduciary duty claim "is personal in nature because it springs from the duty to deal

---

[7] OpenRisk cites to *AvalonBay Cmtys., Inc. v. Willden* as recognizing such a cause of action in Virginia.  No. 1:08cv777, 2009 WL 2431571, at *11 (E.D. Va. Aug. 7, 2009).  That case predates this Court's analysis in *Calderon*.  While *AvalonBay* has not been expressly overruled, its reading of *Halifax* overlooked the Supreme Court of Virginia's equivocal language about such a cause of action.  *See id.* (citing *Halifax*, 604 S.E.2d at 413-14).  Accordingly, this Court declines to apply *AvalonBay*'s reasoning.

honestly and fairly with fiduciaries"); *Broyhill v. Bank of Am., N.A.*, 1:10cv905, 2010 WL 3937400, at *3 (E.D. Va. Oct. 6, 2010) (applying *Singer* to find breach of fiduciary duty claim barred by the statute of limitations).  OpenRisk asserts that it is improper for MicroStrategy to assert a statute of limitations defense since it represented to the Massachusetts court that it would not assert such a defense against "substantially similar claims" that were filed as counterclaims in this action. (MicroStrategy's Mem. in Supp., Ex. D, at 12.)[8]

The only aiding and abetting claim in the Massachusetts action was that of misappropriating trade secrets and other confidential information.  (MicroStrategy's Mem. in Supp., Ex. D, at 4-5.)  OpenRisk asserted that MicroStrategy facilitated the misappropriation of trade secrets and confidential and proprietary business information by allowing the co-conspirators continued access to the OpenRisk cloud environment.  (MicroStrategy's Mem. in Supp., Ex. C, at 41.) Here, the aiding and abetting claim alleges that MicroStrategy affirmatively participated in the breach of the former officers' fiduciary duties, which presumably include the alleged

---

[8] The Court may consider the court's order and the pleadings in the Massachusetts action because the counterclaims incorporate them by reference.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating that on a motion to dismiss, the court may consider documents attached to the complaint and those attached to the motion to dismiss, so long as they are integral to the complaint and authentic).

disclosure of trade secrets and confidential and proprietary information.  (Countercl. ¶¶ 104-109.)  Though the legal theory is different, the factual underpinnings of the claims are the same, and there is no separate cause of action for aiding and abetting misappropriation of trade secrets in this action. Therefore, the Court declines to consider the statute of limitations defense, as it appears the claims are "substantially similar."  Nonetheless, Count I must be dismissed for the reasons stated earlier.[9]

### B. Counts II and III – Conspiracy Counts

To establish the statutory business conspiracy claim alleged in Count II, OpenRisk must plead that two or more persons acted together for the purpose of willfully and maliciously injuring another in his reputation, trade, business or profession.  Va. Code. Ann. § 18.2-499 – 500.  In order to plead a case for common law conspiracy, which is Count III of the Amended Counterclaims, OpenRisk must plead (1) two or more persons acting in concert; (2) for some unlawful purpose or for some lawful purpose by unlawful means; and (3) resulting damages.  *The Country Vinter, Inc. v. Latour*, 634 S.E.2d 745,

---

[9] As a third argument in support of dismissal of Count I, MicroStrategy argues that the claim is either preempted by the Virginia Uniform Trade Secrets Act ("VUTSA") or does not allege any fiduciary breach.  (MicroStrategy's Mem. in Supp. at 11-14.) In light of its earlier ruling, the Court need not reach this argument.

751 (Va. 2006).  MicroStrategy raises three independently sufficient grounds in support of its motion to dismiss these claims: (1) OpenRisk's trade secrets misappropriation claim fails, so these claims must fail as well because there is no predicate unlawful act; (2) if the information is a trade secret, the claims are preempted by the Virginia Uniform Trade Secrets Act ("VUTSA"); and (3) the Court need not determine whether the information at issue meets the statutory definition of trade secret, as courts in other jurisdictions have read identical language in other states' trade secret acts broadly to preempt *any* non-contract civil claim based on confidential information that does not rise to the level of trade secret. (MicroStrategy's Mem. in Supp. at 7-11.)  OpenRisk argues that its conspiracy claims are in the alternative to its trade secret misappropriation claim and determining whether preemption applies is premature at this stage.  (OpenRisk's Opp. at 7.)

The VUTSA "displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret."  Va. Code. Ann. § 59.1-341(A).  However, this preemption provisions does not include "contractual remedies whether or not based upon misappropriation of a trade secret; or other civil remedies that are not based upon misappropriation of a trade secret[.]"  Va. Code Ann. § 59.1-341(B)(1)-(2).  This language was adopted from the Uniform

Trade Secrets Act ("Uniform Act"), which originally proposed by the National Conference of Commissioners on Uniform State Laws and has now been enacted in most of the United States.  Milton E. Babirak, Jr., *The Virginia Uniform Trade Secrets Act: A Critical Summary of the Act and Case Law*, 5 Va. J.L. & Tech 15, 15 (2000).

MicroStrategy argues that the Court need not determine whether the information is a trade secret to preempt the conspiracy claims.  Cognizant of this Court's opinion in *Stone Castle Fin. Inc. v. Friedman, Billings, Ramsey & Co., Inc.*, MicroStrategy urges the Court to hold that common law claims based on confidential information that do not rise to the level of trade secret are preempted by the VUTSA, citing several post-*Stone Castle* decisions from other jurisdictions in support. (MicroStrategy's Mem. in Supp. at 9 n.5.)

In *Stone Castle*, the question presented was whether the Court could invoke the preemption provision of the VUTSA to dismiss common law civil claims based on confidential information that may or may not have been a trade secret under the VUTSA.  This Court canvassed the case law and determined that where the underlying harm for both the VUTSA claim and common law claim was trade secret misappropriation, common law recovery was preempted by statute.  191 F. Supp. 2d 652, 657-588 (E.D. Va. 2002) (citing *Smithfield Ham & Prods. Co., Inc. v.*

12

*Portion Pac Inc.*, 905 F. Supp. 346, 348 (E.D. Va. 1995) ("The plain language of the preemption provision indicates that the [VUTSA] was intended to prevent inconsistent theories of relief for the same underlying harm by eliminating theories of common law recovery which are premised on the misappropriation of a trade secret.")).  The Court denied the motion to dismiss alternative tort claims pled in *Stone Castle* because it could not be established at that point in the litigation that the confidential information at issue was, in fact, a trade secret. *Id.*; *cf. S & S Computers & Design, Inc. v. Paycom Billing Servs., Inc.*, No. CIV.A.500CV00058, 2001 WL 515260, at *3 (W.D. Va. Apr. 5, 2001) (holding that VUTSA displaced a claim for breach of fiduciary duty where the claim was based on misappropriation of a trade secret and finding that plaintiff alleged sufficient facts that, if proven, would establish the information as a trade secret).

Since *Stone Castle* was decided, other courts have had occasion to consider whether the preemption provision of the Uniform Act encompasses confidential business information.  Some courts, like the Wisconsin Supreme Court, found that state's preemption language[10] "excepts from the class of unaffected

---

[10] The language of the preemption provision in Wisconsin's Uniform Trade Secret Act is identical to that in the Virginia Act.  *Compare* Va. Code Ann. § 59.1-341 *to* Wis. Stat. § 134.90(6).

13

remedies only those remedies based on the misappropriation of a statutorily-defined trade secret. It leaves available all other remaining civil remedies for the protection of confidential information." *Burbank Grease Servs., LLC v. Sokolowski*, 717 N.W.2d 781, 789 (Wis. 2006). To hold otherwise would require the court to rewrite the statute to read: "Any civil remedy not based upon misappropriation of a trade secret *and not based on confidential business information*." *Id.* at 790 (emphasis in original).

Other courts have reached a contrary result. Illustrative of these cases is *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*[11] In *BlueEarth*, the Supreme Court of Hawaii determined that the Hawaii Uniform Trade Secrets Act ("HUTSA") displaces non-contract civil claims based on the alleged acquisition, disclosure, or use of confidential information that does not rise to the level of a statutorily-defined trade secret. 235 P.3d 310, 325 (Haw. 2010). Therefore, it was not necessary to determine whether the information was a trade secret before addressing preemption under the HUTSA. *Id.* In reaching its decision, the court ultimately joined the "majority of courts" in holding that the HUTSA's preemption provision abolishes alternative, free-standing causes of action for theft

---

[11] HUTSA's preemption provision is identical to that in the VUTSA. *Compare* Va. Code Ann. § 59.1-341 *to* Haw. Rev. Stat. § 482B-8.

or misuse of confidential or proprietary information. *Id.* at
322.  Such an interpretation, the court stated, promotes uniform
interpretation of the Uniform Act and gives teeth to the
statutory preemption provision. *Id.* (citation omitted).
However, it has the effect of "leaving businesses without an
effective remedy for the misappropriation of information they
viewed as valuable but that did not rise to the level of a trade
secret." *Id.* (citation and internal quotation marks omitted).

MicroStrategy has not cited any controlling authority
from the Supreme Court of Virginia in the wake of *Stone Castle*,
and this Court's search did not reveal any.  Subsequent to this
Court's decision in *Stone Castle*, other courts have adopted its
reasoning on the scope of VUTSA's preemption. *See E.I. DuPont*
*de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443,
451-52 (E.D. Va. 2009) (rejecting preemption argument at the
motion to dismiss stage and citing *Stone Castle* as the
prevailing interpretation of the VUTSA in the Eastern District
of Virginia); *see also MicroStrategy Inc v. Business Objects,*
*S.A.*, 429 F.3d 1344, 1364 (Fed. Cir. 2005) (citing *Stone Castle*
in dicta as controlling where district court cannot determine
whether information fits the statutory definition of a trade
secret); *AWP, Inc. v. Commonwealth Excavating, Inc.*, Civil
Action No. 5:13cv031, 2013 WL 3830500, at *7 (W.D. Va. July 24,
2013) (citing *Stone Castle* and stating that defendant's

preemption argument was premature at motion to dismiss since plaintiff, while alleging sufficient facts to make out a claim under the VUTSA, had not yet proven its entitlement to relief).

Applying VUTSA's preemption provision would be premature here.  First, without the benefit of a factual record, the Court cannot conclusively determine whether the information is a trade secret.  *See Trident Prods. & Servs, LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F.Supp.2d 771, 779 (E.D. Va. 2012) (noting whether a trade secret is "readily ascertainable," an element of a trade secret under the VUTSA, is "heavily fact-dependent"); *Young Design, Inc. v. Teletronics Int'l, Inc.*, No. Civ. A. 00-970-A, 2001 WL 35804500, at *6 (E.D. Va. July 31, 2001) (stating whether reasonable efforts to maintain secrecy of information, an element of a trade secret under the VUTSA, is a "fact intensive question") (citation and internal quotation marks omitted).  That means the plain language of the preemption provision – preempting any civil claim based on trade secret misappropriation – is not implicated here.  Second, absent guidance from the Supreme Court of Virginia, the Court declines to enlarge the reach of VUSTA's statutory preemption to include confidential business information.  Therefore, the motion to dismiss as to Counts II and III will be denied.

16

## C. Count IV - Tortious Interference with Contract

The elements required for a prima facie showing of tortious interference with contract rights are: (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resulting damage to the party whose relationship or expectancy has been disrupted. *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 670 S.E.2d 704, 706 (Va. 2009) (citing *Chaves v. Johnson*, 335 S.E.2d 97, 102 (1985)). Microstrategy argues that OpenRisk has failed to show that MicroStrategy caused any breach of the contract or that it acted with the requisite intent. (MicroStrategy's Mem. in Supp. at 15-17.)

OpenRisk must allege a "causal link" between MicroStrategy's interference and the former officers' breach. *See Mansfield v. Anesthesia Assocs., Ltd.*, No. 1:07cv941, 2008 WL 1924029, at *5 (E.D. Va. Apr. 28, 2008). Here, OpenRisk's own pleading dooms its claims. In the Amended Counterclaims, OpenRisk alleges "Roston *had earlier persuaded the Former Officers to join his scheme and, at his urging,* on October 10, 2011, they resigned from OpenRisk[.]" (Am. Countercl. ¶ 68) (emphasis added). Additionally, the Amended

17

Counterclaims also allege that *after* the former officers
resigned, MicroStrategy began to work with the co-conspirators
to unlawfully transfer trade secrets and other confidential and
proprietary business information.  (Am. Countcl. ¶ 71.)  While
these allegations demonstrate that MicroStrategy may have
facilitated the former officers' breach of contract, it does not
show that MicroStrategy itself caused the former officers to
breach their contracts with OpenRisk.  In fact, it appears from
the allegations in the Amended Counterclaims that the decision
to breach was made before MicroStrategy became involved.
Therefore, OpenRisk's claim for tortious interference with
contract must fail because it has not sufficiently pled
causation.

Microstrategy also challenges whether OpenRisk has
pled the requisite intent for tortious interference with
contract.  "[A] plaintiff must show that the alleged tortfeasor
acted with the purpose of interfering with the contract or with
the knowledge that the interference was certain or substantially
certain to occur as a result of its actions." *Mansfield*, 2008
WL 1924029, at *5 (citation omitted).  Since OpenRisk has failed
to allege that MicroStrategy took any actions to induce the
former officers to breach their contracts, it follows that
MicroStrategy lacked the intent to induce breach.  Therefore,
Count IV must be dismissed.

18

### D. Count V – Misappropriation of Trade Secret

To state a claim for misappropriation of a trade secret, a plaintiff must allege sufficient facts to establish (1) the existence of a trade secret and (2) its misappropriation by the defendant.  *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 688 (Va. 2012) (citation omitted).  To establish that the information at issue is a trade secret, a plaintiff must prove that the information "(1) has independent economic value; (2) is not known or readily ascertainable by proper means; and (3) is subject to reasonable efforts to maintain secrecy."  *Marsteller v. ECS Fed., Inc.*, No. 1:13CV593, 2013 WL 4781786, at *4 (E.D. Va. Sept. 5, 2013) (citation and internal quotation marks omitted).

MicroStrategy challenges whether OpenRisk has stated a viable claim for misappropriation of a trade secret because OpenRisk's efforts to maintain secrecy were insufficient as a matter of law.  (MicroStrategy's Mem. in Supp. at 17.) Specifically, MicroStrategy argues that the "key figure in this case" – an OpenRisk consultant who put the information on MicroStrategy's cloud environment – was not subject to a confidentiality agreement with the consultant.  (*Id.* at 18.)  As best the Court can tell, information about the extent of the consultant's role appears nowhere on the face of the Amended

Counterclaims, let alone any specific information about a confidentiality agreement.

MicroStrategy cites to *KEMA, Inc. v. Koperwhats*. In *KEMA*, the court dismissed the defendant's first amended counterclaim for misappropriation of a trade secret because the defendant admitted in his allegations that he provided the information to one of the counterclaim defendants without any confidentiality agreement or other restriction. No. C-09-1587 MMC, 2010 WL 3464737, at *6 (N.D. Cal. Sept. 1, 2010). The second amended counterclaim also failed because the defendant realleged his trade secret misappropriation claim without material alteration. *Id.* at *7.

OpenRisk has not provided sufficient factual allegations to succeed in establishing a prima facie case that the information at issue is a trade secret. Specifically, OpenRisk has not alleged that the consultant was under either an express or implied duty to keep the information confidential. As other courts have noted in ruling on summary judgment motions, trade secret protection is eviscerated when otherwise protected information is disclosed to others who have no obligation to protect its confidentiality. *See Young Design,* 2001 WL 35804500, at *6. Therefore, this count will be dismissed.

### E. OpenRisk's Motion for Leave to Amend

At the motion hearing, OpenRisk orally moved to amend its counterclaims should the Court grant the motion to dismiss. A party may amend its pleading once as a matter of course, but after the first amendment, the party must obtain written consent from the opposing party or leave of court.  Fed. R. Civ. P. 15(a)(1).  Rule 15 of the Federal Rules of Civil Procedure directs that "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The liberality of the rule "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."  *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) (citation omitted).  A district court may deny a motion to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Lorenz v. Davis,* No. 1:07cv940, 2008 WL 2943306, at *7 (E.D. Va. July 30, 2008) (citations omitted).  "[M]otions to amend are committed 'to the discretion of the trial court.'"  *Id.* (citation omitted).

Any amendment to Count I would be futile, as Virginia law does not recognize such a cause of action.  However, OpenRisk will be granted leave to amend Count IV (tortious interference with contract claim) and Count V (misappropriation

of trade secret).  OpenRisk shall have ten days from the date of this Memorandum Opinion and accompanying Order to amend.

## IV. Conclusion

For the foregoing reasons, MicroStrategy's motion is granted in part and denied in part.  An appropriate order will issue.

/s/

| | |
|---|---|
| March 17, 2015 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |